May it please the Court, Edward Zass for Appellant Prado. This is a case about the Maritime Drug Law Enforcement Act, and we're asking the Court to issue two rulings here. First, that the issue of whether a vessel is subject to the jurisdiction of the United States involves a non-waivable question of subject matter jurisdiction. And second, that the vessel here, which we refer to as the go-fast, was not subject to the jurisdiction of the United States. On the first point, the circuits are split on the question of whether the vessel subject to a requirement is a matter of subject matter jurisdiction. Split three to one, right? Split three to one, and we're hoping you'll make it four to one. Now, I didn't include this Court in the split, but there is a decision from the early 80s in Pinto Mejia, which was, strictly speaking, decided under the predecessor statute, but did treat the exact same language, vessel subject to the jurisdiction of the United States, as a non-waivable question of subject matter jurisdiction, the importance being, of course, that jurisdiction could not be waived by the guilty police here as the government argues. Your argument is that it fails, the government fails to prove a jurisdiction because of the terms of the statute? That is, they didn't make a request of the three sailors as to the nationality of the boat? Well, there's several layers. The first being that the government, as the party invoking jurisdiction, bears the burden of proof to show that jurisdiction was proper. There appears to be a dispute among the parties as to what the burden is. We argue it's beyond reasonable doubt, and there's support for that in a dissenting opinion in the First Circuit in the case of Matos-Lucci. But the majority there says preponderance. I'm not sure this Court needs to resolve it because we think even under a preponderance standard, the government didn't meet its burden. So let me go to the next question. Yes. I'm curious as to why, I don't know whether your office was involved in the district. Were you involved in the district court? Our office was. I personally was not. Why wasn't there a motion to suppress the evidence as the fruit of an illegal search? It seems to me that there was an illegal search because the Coast Guard had the right to board this vessel and search if the Coast Guard made a determination, could make a determination, that it was a stateless vessel, and thus subject to the jurisdiction of the United States. But as I understand it, the Coast Guard came up, and the vessel, of course, was speeding away, not making it easy, but the Coast Guard, when they stopped the vessel, could have asked, are you registered? And received an answer, and either received no answer, which would mean fine, they can go ahead, or received an answer which they could then have verified with Ecuador, is this vessel registered? And if the answer was no, they then could have proceeded. But they didn't do that. They just went ahead and boarded the vessel and searched it and seized the drugs and arrested the people. Why wasn't that illegal conduct? Your Honor, I'm not sure I can answer the question because I actually don't know the answer, but you're making an excellent point. But I think if there was no authority to seize the vessel at all, I think a fasciore, there's no jurisdiction to haul these foreigners into the... That's not true, because, I mean, if somebody fails to, the fact that there was no authority, they didn't go through the procedures. We don't know the answer. To whether the vessel was subject to the authority of the United States, because the procedures weren't gone through. Maybe it was an Ecuadorian vessel. Probably it wasn't. But the defendants pleaded guilty. They litigated some things for some time, and then they reached the, okay, we're going to forget the motions we're making. We're going to plead guilty. And so that's a completely different question. If I was disagreeing, I didn't mean to disagree with you. I think that the point is exactly right, that there are procedures. They are set forth in the statute. They are not particularly onerous, by the way. The government only needs to make the inquiry of Ecuador. They're not onerous at all. The government makes the inquiry. The inquiry itself can reveal that the vessel is stateless if they say it's not registered or if they give an answer to say it's registered and the government and the Coast Guard checks it out, and they're not. It's a phone call. That's right. And the only point where I slightly disagree is Your Honor said that we don't know whether the vessel was subject to this jurisdiction of the United States. But if you agree with us that this vessel was flying the flag of Ecuador, then we know there was not jurisdiction because then we know the government never ---- Flying the flag of Ecuador under the statute is making a claim, is making a claim. No. No, Your Honor. The statute defines claim of nationality or registry in three ways. Yeah. One is a verbal claim of nationality or registry. One is flying the flag. One is flying the flag. But that is not a verbal claim. That is a physical claim of the flag being flown. And the parties disagree as to what that statutory term flying a nation's flag means. We say it doesn't mean it has to be a cloth affixed at one end and flapping in the breeze, which is what the government says it means. We say, given the maritime context and the surrounding context of the statute and ordinary English usage, it means displaying a nation's flag on a ship to signal that what you present is a sticker on the side of the boat. Isn't that it? Well, no, I wouldn't characterize it as a sticker. It's not clear what it was because the government blew the ship out of the water before. The flag doesn't establish anything. The flag is simply a claim. The flag is defined by the statute as one of the ways in which a vessel can make a claim of nationality. And then another provision of the statute says that if the claim, if on verification the claim is proved invalid, it's the vessels without nationality. The existence of the flag flying doesn't establish nationality at all. But it is a claim, as Your Honor points out. And what it does trigger is a duty of inquiry on the part of the United States. To check with Ecuador. To check. Not necessarily to get a decision. The country can just say we have no idea about this boat. There's jurisdiction. It's over. And it's proved conclusively by a certificate from the Secretary of State. None of this was done. That's why I said it was an illegal search. Yes. It seems to be. Yes. But I think it's also on a more fundamental level. There's no subject matter jurisdiction in this district court at all to bring the prosecution. That is drawing a huge assumption because you're assuming that the reference to jurisdiction is talking about the jurisdiction of courts. The only type of jurisdiction that is non-waivable and that according to the theory the judgment of the court can be wiped out even 100 years later because the court was without the power. That is only when the provision goes to the court's authority to hear the case. It doesn't have to do with a case where the statute uses jurisdiction with respect to defining the crime and what must be true in order for the crime to be prosecuted. That's 100 percent right. And that's exactly where the circuits are split. So to take the D.C. Circuit, which is probably the most exhaustive analysis, they go through the reasons why this language in this particular statute is subject matter jurisdiction in the very narrow sense that Your Honor has defined it, meaning the power to adjudicate the case. I think both the government and I are using the term in exactly this narrow fashion, not a broad, loose term of jurisdiction or personal jurisdiction or anything. This is a curtailing of the general criminal jurisdiction statute. The general statute, which the government relies on, that's 3231, gives United States courts, district courts, the authority, the jurisdiction to preside over all offenses against the United States. But Congress has the power in other statutes, in specific criminal statutes, to narrow or condition or curtail that grant. So although the general grant gives jurisdiction over all offenses of the United States, you have to read that in harmony with this Act, which then says, but only if the offense is involved, vessels subject to the jurisdiction of the United States. And we think the better view, certainly the majority view in the circuits, is that this is precisely subject matter jurisdiction. It can't be waived. It can't be forfeited, even if the parties agree. They say, Judge, we want you to have jurisdiction. We think you have jurisdiction. The Court has an independent obligation at all stages of the case to satisfy itself that it has jurisdiction. And that's the part that is not here. I think when Mr. Prado and the other defendants pled guilty, everyone proceeded under the normal assumptions that all pending motions are either moot or they're waived and they're gone, and the case can proceed to sentencing. But subject matter jurisdiction, this kind of jurisdiction is special. And even if the parties didn't bring it to the Court's attention as strongly as they should have, the Court had before it evidence all from the defense side, by the way. The government, the only evidence that the government ever produced was the initial complaint in this case. But it had evidence that at the very least called into question whether this was or was not a vessel subject to the jurisdiction of the United States. Sotomayor, so one last, and you're over your time, but the presider is obviously letting you go, but one last question before I'm done. What should, in order to have established the jurisdiction, what should have happened? Well, the Court had a couple of alternatives. No. What there at the scene should have happened in order for the Court now to have ---- I see. In the water. In the water, right. At the time of the interdiction. The government, assuming the boarding was lawful, it gets to the ship. It finds these three individuals. It sees this emblem of a flag. It's on both sides of the hull. The government produced the video itself that captures those images. So that, we say, first triggered the duty to contact Ecuador. Could have been done by radio, by telephone. They're on board, or they're up in the helicopter, or? Either way. Either way. And by the way, this is not the first time they've seen this flag in the record as part of the motion for reconsideration, which was never resolved. We show that Ecuador and the United States have this treaty obligation where there's a form that actually has a box that says claim of nationality with a box that says flag painted on stern. So this shouldn't have been new to the Coast Guard. It's a Coast Guard form. This is a ---- I'm not sure if it's a Coast Guard form, and I believe it is a Coast Guard form. It's not a state form? I think it is a Coast Guard form. It was actually, I think, attached to the convention to which the United States and Ecuador are parties. And you can find it in the pen. So there's the flag, which we think is a claim of nationality. That triggered the duty to inquire. So that's one.  Yes. Yes. There's no evidence it was made. Okay. Defendants' affidavits, which are, which are, which are, which are, which are, which are two affidavits which say there was no such inquiry made. There's nothing to contradict that from the government's side. So if, in response to that request, the defendants fail to make a claim of nationality, that would then qualify the boat as a vessel without nationality, leaving aside the flag. I'm assuming the flag already established that there was no jurisdiction, but it's another way. Okay. And what other? There isn't another way, is there? And if they say this is an Ecuadorian boat, then they're back into the first, you've got to contact Ecuador and see if it's an Ecuadorian boat. That's right. But they said they were Ecuadorian, didn't they? They did. They did. But that doesn't, but that doesn't give the nationality of the boat, which is the, what we're concerned about under the statute, right? Well, they say we are Ecuadorian or we are Ecuadorian nationals or something to that effect. It's not exactly clear what the exact language was. But we, and there was no, there's no evidence that they specifically mentioned the boat's nationality. We agree with that. But we say that depending on what the questions were and the context of what the follow-up answers were, it could be that when you say we're from Ecuador, you mean to include yourself in the boat. For example, if the question was, what are you guys in your boat doing out here on the high seas? They say, we're from Ecuador. All of us, including the boat. Well, that could be what it means. We don't know because there was no, there's never been any hearing. There's never been any evidence. But the judge ruled that because the language was we, the we did not specifically say boat. It didn't qualify or jurisdiction existed. What did the Morrison case say to this issue? I think, you know, Morrison talked about the enforcement reach of securities laws. And it said, I believe that foreign transactions, that fraud involving. I don't think Morrison, that when the issue is whether the law of the United States applies to the foreign conduct, it is a mistake for courts to treat that as a matter of the jurisdiction of the court. It should be treated as a matter of the requirements of the statute and not as a matter of court jurisdiction. So I think that it's — I haven't looked specifically at Morrison in a while or the statute, but the Morrison decision suggests to me that whether the transaction is foreign or domestic ultimately goes to the jury. It's part of whether there was a violation. Here, the statute says explicitly that the question of whether the vessel is subject to the jurisdiction of the United States doesn't go to the jury. It's exclusively for the court as a matter of law. So it's different in that sense. It's not an element. I don't think the government disputes that. It says that, doesn't it? It's not an element. The government says, but it's not subject matter jurisdiction. It's some other strange animal that, frankly, I've never seen. That's something — We'll hear from the government shortly. Yes. And we'll ask them. Your time has long expired, but you have reserved one minute for rebuttal. We'll hear from Bautista, Hector Bautista. Good morning, Donald Ionella. To answer Your Honor's question, under 70502, what should have occurred out there on the seas is that the MDLEA required the United States to communicate with the foreign nation, specifically Ecuador, and they did not do this in this case. Instead, they chose to scuttle the boat. We had a helicopter up in the air. We had the interceptor, which is a smaller boat launched from a cutter, and we had a three-person boarding team, and none of those boats photographed the perimeter of the GO-FAST. To say whether or not there were — Why didn't you move to suppress? Our thinking at the time was we considered making a Fourth Amendment motion to suppress. We didn't think that would apply extraterritorially. We decided to proceed on three grounds, a motion for spoliation because the U.S. Coast Guard inexplicably decided to scuttle this boat without photographing the saying the complaint — saying inaccurately in the complaint that it failed to show signs of registration or nationality on its hull. And it's only when the federal defenders took the video that was shot from the helicopter and slowed it down frame by frame, they found — by zooming in, they found a photograph of what we call the flag of Ecuador, and which the government concedes, at the very least, is something that appears to be the flag of Ecuador, and they called it an emblem. So we chose to proceed by a spoliation motion, a motion to dismiss for lack of jurisdiction, and then under a due process claim, arguing that it was fundamentally unfair and arbitrary for the U.S. to assert jurisdiction over the boat in this location. And the reason we argued it was fundamentally unfair would be that if a boat were carrying some type of narcotic, any quantity whatsoever, and it had an emblem painted on the side, by the government's interpretation, even if it was just a small quantity of marijuana, and it was somewhere off the coast of Japan, even if it were one joint, and even if it had the flag on the side of the boat, but they're calling it an emblem, if it wasn't big enough, the U.S. could assert jurisdiction and bring these individuals back to the southern district of New York under their reading of the statute. And that's fundamentally unfair, and it's arbitrary. So the government, the parties cannot waive jurisdiction, as my co-counsel argued. We could only stipulate the facts from which the court might find jurisdiction, and we did not do that here. In fact, it's — Sotomayor But your arguments — let me just back you back up a minute. I mean, your arguments about due process and those various things are — your client having pleaded guilty, those are gone. Well, yeah. I mean, what you have left and what we're wrestling with, I think, but please correct me if you have a different view, is the matter of the jurisdiction of the court actually to punish this as a crime, right? Yes. Normally, constitutional challenges are weighed by a guilty plea, as we had here. Guilty plea. I would just ask Your Honor to consider that perhaps in the context of this case where we have a subject matter jurisdiction claim to begin with. But I take Your Honor's point. There is a problem. I think we have a strong argument on the merits of the due process claim, but there is a problem with the preservation for appeal. Counsel, you reserve two minutes for rebuttal. And I know you subscribe to the arguments of your co-counsel. Yes. Thank you. We'll hear from the government. May it please the Court. Siddhartha Kamaraju on behalf of the government. I also represented the government before the district court in those proceedings. I'd like to pick up on the line of questioning I think Judge LaValle and Judge Hall were just speaking about, which is the question before we turn to whether a claim of nationality was made is whether the court should even entertain these challenges, whether there is subject matter jurisdiction here in the first place. And I recognize there is a circuit split, but we'd respectfully submit that what each of those circuits and what the appellants do is they confuse the language vessel subject to the jurisdiction of the United States with a concept of the jurisdiction of a court. And those are two very different things. As Judge LaValle pointed out, Morrison actually addresses this, and this Court addressed this concept in Yusuf as well. In Morrison, the issue was whether the extraterritorial reach of the Securities Act constituted a subject matter deficiency or whether it constituted some other issue that specifically went to the merits of the case. And Morrison was very clear that that kind of claim, extraterritoriality, goes to the merits, not to the subject matter jurisdiction of the court. And what we have here is we have a statute in which the language upon which the Miranda Court, which is the first – which is the D.C. Circuit decision and the appellant, what they hang their hat on is a vessel subject to the jurisdiction of the United States. That language does not speak at all about the court's authority. It is very specifically targeted to the jurisdiction of the United States to prescribe certain conduct. Does the United States have the power under the statute to prosecute this crime? Yes, that's right, Your Honor. And that's a common usage in any number of statutes where, frankly, it wouldn't make sense to construe it as the authority of the court to hear the case. For example, we cited in our brief Title 18 United States Code Section 1001, which involves making false statements to Federal agents within a matter of the jurisdiction of the United States. I don't think anybody or even the appellants would contend that if a district court granted a Rule 29 motion finding that it was concerning a matter that was not within the jurisdiction of the United States, that the district court would not have subject matter jurisdiction to enter a judgment of acquittal. That demonstrates the difference. And this Court, in Youssef, specifically noted that there is a difference between the power of the United States to prescribe conduct, whether the United States can proceed, and whether the district court has authority to hear it. And turning back to Morrison, what I think is important here Well, what's the good of proscribing conduct if it can't be brought to a court to be tried? Well, Your Honor, there are circumstances in which a court has the ability to entertain a challenge to a statute that says that the United States has exceeded its authority. And an example of that is extraterritoriality in determining whether The one you just cited about 1001, if the court could decide, the court can hear the case and the court can make a ruling that this matter was not the matter in which the defendant made a false statement was not within the jurisdiction of the United in fact inquiring into this, right? That's absolutely right, Your Honor. And I think what's significant is the Supreme Court certainly has noted that Congress is able to create limitations beyond what's, say, for example, found in 183231, which grants jurisdiction to district courts over offenses against the United States. Congress is empowered to create additional statutory requirements. But because of the tremendous burden that subject matter jurisdiction limitations can pose, and Judge LaValle, you noted one, for example, that a judgment could be set aside 100 years down the road on the basis of the subject matter challenge. Because of that, Congress said, or the Supreme Court said, pardon me, that the language has to be clear. It has to be unmistakable. That's in the Arbog case. That's also in the Gonzalez case. And Congress has demonstrated its ability to, on the one hand, use language that limits the U.S.'s ability to prosecute case, the 1001 example, versus, on the other hand, very specifically talking to the or speaking to the jurisdiction of the court. So in Morrison, for example, there is a statute within the Securities Act that conveys jurisdiction to district courts. That statute reads, the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction. The statute is very specific to refer to the district court's jurisdiction. That's also true in the diversity statute, 1332, where it says, the district court shall have original jurisdiction of all civil actions. It's true in 3231, where the ---- Roberts. What was the part of that statute that spoke about any place subject to the jurisdiction of the United States? I'm sorry, Justice Alito. I didn't understand your question. The statutory language you were just reading, relevant to the securities laws, you just read a phrase that said, any place subject to the jurisdiction of the United States. Yes. Can you read that again? I didn't catch that. Certainly, Your Honor. So the ---- it first refers to the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States. So it is referring to, we submit, a court that is located in another place subject to the jurisdiction of the United States. It specifically says that those courts shall have exclusive jurisdiction. And I think, you know, two different usages of the word jurisdiction, two uses of jurisdiction meaning different things in the same statute, one of which speaks about the courts having jurisdiction to hear the case, exclusive it is, and the other one talking about a place that is subject to the jurisdiction of the United States, which uses it more or less in the manner in which this statute uses it. That's exactly right, Your Honor. And I think that is the fundamental flaw in the textual analysis that is advocated by the appellate and adopted by the Miranda court. And also, just against the backdrop of Supreme Court jurisprudence, that analysis or that application of the law doesn't make sense. Arbaugh, Justice Ginsburg, pointed out that the jurisdiction, the word jurisdiction has many different meanings, and it's only when the statute is using the word clearly with reference to the jurisdiction of courts that it acquires this character that it can be raised at any time and is not waived by a guilty plea or whatever. That's exactly right, Your Honor. And what Justice Ginsburg also noted in Arbaugh is that there has been a tendency both by parties and courts to use that phrase very loosely. In Reed Elsevier v. Muchnick, Justice Thomas provided some definition to the phrase jurisdiction when applied to the court. Specifically, jurisdiction when referred to a court involves either jurisdiction over classes of cases, that would be subject matter jurisdiction, or jurisdiction over classes of people, which would be personal jurisdiction. And as the Gonzales court in the First Circuit, as they noted, the statutory language in the MDLA does neither of those things. What it does is it refers to classes of vessels that can be subject. So within the same category of cases, it differentiates between the different types of vessels that can be subject to the jurisdiction of the United States. So even against the backdrop of prior Supreme Court jurisprudence, it doesn't make sense. If the vessels are subject to the jurisdiction of the United States and someone is arrested on one of these vessels, as these defendants were, where do you go next? If somebody is arrested subject to a — on a vessel subject to the jurisdiction of the United States, they would then be extradited, in essence, or transported to a Federal district court. What if the vessel is not? If the vessel is not subject to the jurisdiction of the United States, and they're incorrectly brought to a district court for purposes of prosecution, well, there's a methodology by which that can be challenged, which is — which would protect their rights. There is a motion to dismiss the indictment in that case, which the court can hold an evidentiary hearing because it is a preliminary question for the court, in exactly the same way as a court can entertain a challenge to the extraterritorial reach of a statute. They could perfectly well have made a motion to dismiss this complaint on the grounds that the statute — the requirements of the statute were not satisfied because the — the United States never — never made the determination that it was a vessel without nationality subject to the jurisdiction of the United States. They were entitled to that. In fact, they did do that. And the court decided — and then they filed a motion for reconsideration afterwards, but abandoned it, which is similarly inconsistent with a view that this was a subject matter jurisdiction question. But I think what that addresses also, Judge Hall, to turn to your point quickly, is the Miranda Court expressed some concern that if this was not treated as a matter of subject matter jurisdiction, that there was a hypothetical situation in which a foreign nation would become aggrieved despite a guilty plea and not have a recourse. And I think that's incorrect for a couple of reasons. One, respectfully, the — the potential for friction between — between the United States and a foreign country is a matter that's properly exercised by the executive branch or the legislative branch, but even to the extent it is a matter for the court to consider in construing the statute, the — the parade of horribles doesn't exist because, first, in accepting a guilty plea, as was done in this case, the district court, the defense lawyer, and the government all inquire as to whether there is a valid basis for the plea or whether there is a valid defense, whether the plea is knowing and voluntary. So there's an initial check even to make sure that — that a — a vessel that in the United States, those — those defendants on that vessel aren't prosecuted. But even if that were to slip through and it was still held to be waived, the executive branch still has the ability to redress and address the concerns of the foreign country that is aggrieved through commutation or pardon. So it's not as if the — the foreign relations concerns at the Miranda Court expressed would be met — would be unmet unless the court construed in a subject matter. We discussed for a moment, assume jurisdiction for the purpose of this question, what happened on the boat? Certainly, Your Honor. I think the — the statute certainly has a multi-tiered approach. And in order for the Coast Guard to be obligated in the first instance to reach out to Ecuador, there has to be a claim of nationality. And the statute has very specific ways in which a claim of nationality — Upon request. Upon request. I mean, certain of them would be on request. Yes, Your Honor. So the flag — the flag is a claim of nationality right there showing. Well — well, the statute specifically refers to the flying of a flag, Your Honor. So we — we would submit that — A claim of nationality. Yes, Your Honor. But we don't — but in this circumstance, there's no flag flown. I don't think it's the exclusive way to assert nationality, do you? No, no. There are three — there are three very specific ways in which the statute permits an assertion of nationality, two of which the defense has raised. One is the flag decal that they say was painted on the side of the vessel. The second is that they say that there was a — that the defendants or the captain, in this instance, Hector Batista, claim that the boat was Ecuadorian by saying, well, we are Ecuadorian. Both of those fail. The flag doesn't work because the statute specifically refers to the concept of flying the flag, not displaying the flag. Are you arguing that it has to be a piece of cloth flying on — in the air? Yes, Your Honor. So no submarine. And I just take that, I mean, because obviously you're aware of that argument. No submarine. That is, emerging from having been underwater until it gets up and runs up its flag is recognized as a submarine — as a vessel of a foreign nation. Well, I would agree with that, Your Honor. There is also a separate statute, I believe, that deals with submarines in particular — submersibles in particular. But specific to the statutory language, it's clear and unambiguous. And, in fact, it mirrors what Congress has done in other statutes discussing the Coast Guard. We cited in our brief, but in Title 14, Section 892, Congress itself draws a distinction between flying a flag or displaying a Coast Guard insignia. That — there is a difference between those two terms in ordinary usage. And, in fact, some terms that we refer to in the maritime context with respect to a flag wouldn't make any sense if it would also display to a decal. For example, we talk of hoisting or raising the flag. That doesn't make any sense if you're talking about a flag painted on the side of a vessel. It's an emblem asserting nationality. It is an emblem, but in order to be recognized as an assertion of nationality or a claim of nationality under the statute, it has to meet the statutory requirements of the statutory language. And that's different than simply displaying a flag somewhere. So the boat is boarded by the three-man search team, and the defendants all say, We're Ecuadorians. Yes. Yes, Your Honor. Well, I think — Let's assume they — Right. So they assert, We're Ecuadorians. The phrase, We're Ecuadorians, does not convey anything with respect to the boat itself. Why not? Because it's actually fairly common practice, and I think we make this argument. I think even the district court noted this at oral argument, that crew members of different nationalities always often sail on vessels that are not registered to their nationality. But they said, We're all Ecuadorians, or We are Ecuadorians. That's true. And there were three people on the boat. So the We are Ecuadorians is more reasonably construed to be a reference to the people. And I think this is something that Judge Rakoff noticed, the appellants make considerable hay over the concept of the flag being floated there or the registration numbers. At no point, coupling with the We are Ecuadorians, do any of the defendants claim that they pointed to the so-called registration numbers on the side of the boat, pointed to the decal, and said, Hey, that's us. That's our boat. We're Ecuadorians. Are you claiming that one of the team that entered the boat asked specifically about the nationality of the boat? Because that's what's required by the statute. What's alleged in the complaint and what Judge Rakoff found as a factual matter, to be beyond dispute, is that there was at the very least general questioning which elicited some of the answers that the defendants had. We don't have a — there's nothing in the record to indicate that the Coast Guard specifically asked the question, Where is this boat from? But weren't they supposed to, according to the statute, so they then could contact the country named? What Judge Rakoff found, and I think what the statute says, the statute says upon request. It doesn't specify the exact nature of the questions that have to be asked. And so generally — Would that be a request? A request related to whether the vessel has a claim of nationality? Your Honor, I think you're right that it has to be germane to the question of the origins of the boat or the origins of the individuals. But I think the specificity of that question, whether it's where are you from, is designed to elicit a response and information as to the nationality of individuals, because that is important to the Coast Guard. Whether it's important under the statute is a different question. But it's important to the Coast Guard, for example, no other reason consular notification has to get made at some point, but also to elicit those kinds of answers that will say where's your home port. And in this circumstance, to elicit from the defendants any indication that any of these markings that were on the boat were actually an indication that the boat was Ecuadorian. None of that was done. Did anyone think to take a picture of the side of the boat before it was scuttled? There were videos taken, Your Honor. They are — admittedly, they're not zoomed-up photos of the side of the boat. I would be interested in the size of the decal. Certainly, Your Honor. I do think that the decal is visible in one of the videos. So the Court could see it. It is not — it's not huge, I think we could say, but it is — It would be nice if you had a picture. Well, I think there were some pictures submitted by the appellants of the decal itself. And I do think the video itself is submitted. But I think the broader question in that circumstance, and this goes to Judge Rakoff's decision, is whether that could ever qualify. I understand. I understand. They claim that a flag, a cloth flag, flying in the wind on this kind of boat called a go-fast wouldn't survive in the air. That it's not designed to have a flag that can continue to fly. Whether that is true as a matter of nautical construction, I don't think, has ever been established in the record. But that's why the statute also provides other methods by which they could claim nationality, including, aside from the verbal claim, providing any type of registration papers. So it's not as if in a circumstance where you have a vessel that is unsuitable for a flag that sailors are left without any recourse, they could specifically say this boat is Ecuadorian. They weren't asked that specifically, they claim. That is true. There is nothing in the record showing that those specific words were asked. But there were requests made of the defendant and opportunities for the master. I don't understand why you are defending what seems to me the highly indefensible actions of the Coast Guard in failing to request. If they didn't think the flag was a flag that complied, then they should have asked. I don't understand why you're making this argument. It has nothing to do with this case. This case turns on whether the statute's reference to the jurisdiction of the United States is something that is non-waivable and that can be raised 100 years after the defendants have pleaded guilty, waiving every claim that's waivable. So nothing turns on whether the Coast Guard acted properly or improperly. I don't see how anything that you've said shows that they acted properly when they didn't do, they didn't make a request, nobody having volunteered the information. And if you're right that the affixed flag didn't qualify as flying the flag, then they had to ask. Do you have a nationality? Does this vessel have a nationality of registry? In which case they could have checked. And if Ecuador said, no, we don't recognize it or failed to make an affirmative statement that it is registered, they could do what they did. They didn't do that. I don't know why you're arguing that it has nothing to do with the resolution of this case, whether they acted well or bad. So you're the government, you don't want to be against the government, but it has nothing to do with the issue before us. I completely agree with Your Honor. If anything about this case turned on the arguments that you're making, you would lose, my vote at least, because the Coast Guard didn't do what it was supposed to do. The issue is a completely different thing, which is when the statute says, or speaks of the vessel being within the jurisdiction of the United States, meaning that the United States can go and seize the drugs and arrest the people and so on, whether that is talking about the jurisdiction of courts, such as under 1331 and 1332, which talks about courts of the United States having jurisdiction to hear these cases. I certainly agree with Your Honor's point as to what this case turns on. And lucky for us, at least from Your Honor's perspective, this case does not turn on the application of the MDLA and ultimately whether its procedures were followed. It does turn entirely on whether this court or the district court has subject matter jurisdiction, and in this case whether they, the appellants, have waived their claims. And that is the end. To the extent I have confused that issue at all, I apologize. The government's main argument and thrust here is that the court should not even entertain the defendant's, the appellant's appeal, because they've waived them by virtue of their unconditional guilty pleas. And you say this is just like in 1001, where the statute talks about making a false statement in a matter within the jurisdiction of the United States. That doesn't mean that somebody who pleads guilty to that can 12 years later say, hey, the matter wasn't within the jurisdiction of the United States. I get my guilty plea back and the prosecution should be thrown out. Absolutely right, Your Honor. Your argument is that this is exactly like that. This is, it talks about a vessel within the jurisdiction of the United States as defining what needs to be true for the United States to succeed in a prosecution, but it's not talking about whether the court can hear the case. That's exactly right, Your Honor. So the first question for this court, and the question that has to be answered, is whether this court can even hear this case. That's a good place to stop. Thank you. Thank you, Your Honor. Defense counsel. Judge LaValle, let me see in my rebuttal time if I can persuade you that the D.C. Circuit had it right and the First Circuit has it wrong. This is not like 1001. In 1001 cases, whether the statement is within the jurisdiction of the United States is an element that's proven to the jury beyond a reasonable doubt. It's not a question. There is a good question whether the subsequently added statute, the part that says it doesn't go to the jury, that wasn't part of the original statute. So there are two questions that arise. Two questions arise. One is whether taking it away from the jury is consistent with Apprendi and constitutional. Maybe that's unconstitutional and it has to go to the jury. But another question is, does a subsequent amendment of the statute like that change the meaning of the statute as it was originally passed? The words jurisdiction of the United States were in the statute before the provision that says it doesn't go to the jury. So are you arguing that the statute meant one thing when it was originally passed, but it means a different thing after Congress said, oh, no, we don't want the jury deciding that thing. We want the court to decide that. I mean, wouldn't it be self-evident? If this were a matter of the court's jurisdiction, questions of the court's jurisdiction never go to the jury. Why would you need to say don't put it to the jury if it really were a question of the court's jurisdiction? But nothing about the words of the statute suggests that it goes to the court's jurisdiction. Well, before the amendment you're talking about, all the courts had held that it didn't – it was a question for the jury. It had to be proven beyond a reasonable doubt. But this Court in Pinto Mejia, using the old statute, said that this question went to the court's jurisdiction, subject matter, and couldn't be waived. But to your point about the amendment, the amendment – For Morrison. Yes. Morrison is also different, though. Morrison, all the cases the government is talking about, the government – the Congress did not do what it did here, which is – the Supreme Court tells us, has instructed that when Congress wants to make something jurisdictional in the subject matter jurisdiction sense, it should use the term jurisdiction. Here, it didn't only use jurisdiction to define the vessel, but it has a specific section in 70504, the title of which is jurisdiction and venue. Those are not subjects that go to legislative authority or merits. They're about the power of the courts, where the prosecution takes place, and what kinds of offenses can go before the court. That's exactly what you would expect Congress to do. If the – That section that you're quoting from, that statute, specifically says that the jurisdiction is not an element of the offense. That's exactly right. So if it's not an element of the offense, but the government says, but it's not subject matter jurisdiction, then it's this strange thing where the government says, well, if it's not subject to the jurisdiction of the United States, you should move to dismiss. For what? For lack of jurisdiction. That's exactly what we did. You can't move to dismiss because it's beyond the legislative authority of the Congress. It's – it's jurisdictional. It's not a question of whether it's beyond the legislative authority of Congress. It's a question of whether it's beyond the authority that Congress has exercised. I don't think there's any doubt that Congress would have the power to pass statutes governing conduct on this vessel or any vessel, because Congress has the power to pass statutes that govern conduct in foreign countries. There are lots of these statutes, quite a bunch of them, that explicitly say on their face that they're – that it is – it is a violation of the law of the United States, prosecutable to kill citizens of the United States in foreign countries. Yes, but my point is Congress made a decision to limit what it calls jurisdiction. Now, you know, it does say jurisdiction of the United States. It doesn't say jurisdiction of the courts. I will grant you that. But remember, this is a statute that is talking about maritime law. What Congress was saying – let me slow down for a second. Courts are part of the United States. So the United States includes courts. It also includes the Coast Guard and includes all the branches of the U.S. government. That's what Congress was saying. No one can do this because it's not subject to the jurisdiction of the United States. And the reason they did this is partly what's in the Miranda decision. Congress didn't want these rights to belong solely to the defendant to give up, because a defendant who's picked up in a violent encounter with the Coast Guard and who gets here where there's no jurisdiction may be perfectly willing to say, just give me time served, I won't make any noises, I'll plead guilty and go home. That doesn't protect Ecuador's interests if the government is doing this all over the place. So as I think Miranda persuasively says, Congress wanted to insulate this issue from the normal kind of waiver that a defendant could exercise. So just one final point. If you do reach what I'm calling the merits here, I happen to see the most famous airplane in this country, Air Force One, last night on television. And it has a flag that is painted or plastered or stuck on the back of the tail of Air Force One in both places. Under the government's theory, the President's plane isn't flying the flag of any nation because it's not flapping in the breeze. I think that is an untenable and unnatural use of English language. I think we would all naturally say that plane is flying the American flag, even though it's not flapping in the breeze. So we'd ask you to reach the merits and to vacate the ---- You keep saying flying the flag makes it an Ecuadorian vessel, not subject to the statute. And I keep saying that's not true. No, I didn't say that. You did say it. You said it just before you sat down before. I couldn't believe you said it again. It's the third time you've said it. And I am inclined to agree with you that the flag being affixed to the side of the vessel is flying the flag. But that's simply making a claim of nationality. And the claim of nationality is a vessel isn't Ecuadorian by virtue of flying an Ecuadorian flag. You have to actually be registered with Ecuador. And under this statute, if you make the claim by flying the flag, you are subject to having that verified with Ecuador to see whether Ecuador will confirm it. I never meant to say anything to the contrary. But you repeatedly said it. I take it back. This was the third, at least the third time. It's just a claim, but it triggers that duty of inquiry. That's all I'm saying. The duty of inquiry is on the government. Yes. Thank you. If there are no further questions, thank you for your time. Thank you. You have two minutes, Mr. Yanawa. Okay. Your Honor, it's correct. If you're flying the flag, it does trigger the inquiry, which did not occur here. But on the point that co-counsel was making, as part of the Federal Defender's motion for reconsideration, they had photographs of U.S. ships with no flag flying. Instead, the ships were painted on the side of the ships. Flags were painted. Yes. Flags were painted on the sides of the ships. Correct, Your Honor. Okay. As opposed to having a flag flying in the wind. Gotcha. And regarding the waiver here, now, we had a 10-year mandatory minimum as charged. We negotiated a plea with no mandatory minimum, even though the guidelines were 235 to 293. But we negotiated a plea under a Pimentel letter. So we were seeking to preserve things, or we were seeking to avoid the waiver of appeal that would go with a plea agreement. So I wanted to make that point. One other point. You were seeking it, but you didn't put it into the plea agreement? It was a Pimentel letter. Well, did it say that you were preserving the issue? No. The Pimentel letter is merely a statement by the government of what they think the ‑‑ what they currently think the guidelines would be. It does not purport to waive ‑‑ In what fashion were you seeking to preserve the issue by the guilty plea? We were seeking to avoid the waiver that would be required by a plea agreement to that limited extent. A waiver of appeal? Yes. That's different. That's different from waiving issues by pleading guilty. Perhaps. I'm not sure. Regarding registration numbers on the side of the boat and registration documents in any glove compartment, there is no video. You can watch the video. There is no video of the stern and there is no video of the port. The video is only of the starboard side. And as to the issue of whether there was a proper request and whether it was answered, I would point out that one of the defendants was completely passed out after the engine was shot out and a second defendant went over the side and he was in the water. And there never was any evidentiary hearing here on exactly what was requested. We stated in our document, we made certain assertions in our motions and the government never rebutted those, either in motion papers or by giving any testimony. Thank you. Thank you all for a very lively debate.